UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KAREN HENSON, et al.** : | |
| Plaintiffs, : | |
| v. : | Civil Action No. 04-407 (GK) |
| **W.H.H TRICE AND COMPANY,** : | |
| **et al.** : | |
| Defendants. : | |

## Memorandum Opinion

Plaintiffs' claims arise from the death of Santino Henson in March of 2003.[1] An unknown person shot and killed the decedent in a parking lot at 33 K Street, N.W., in Washington, D.C. Metropolitan Protective Services ("Metropolitan") provided security services at the location.[2] Defendants are business entities and individuals that own and/or manage the parking lot and apartments at the location.[3]

---

[1] Plaintiff Karen Henson is the mother of the decedent and asserts claims in her individual capacity, in her capacity as personal representative of Santino Henson's estate, and in her capacity as next friend of Dominique Henson and Raymond Stewart (the decedent's minor brothers).

[2] Plaintiffs initially named Metropolitan as a Defendant, and the other Defendants filed a cross-claim against the security company. All parties have since settled and dismissed their claims against Metropolitan.

[3] Defendants are W.H.H Trice & Co. ("Trice"), John J. Diggs ("Diggs"), Bush Construction Co. ("Bush"), Temple Courts Associates, and James I. Meade ("Meade").

Plaintiffs bring a survival action and assert claims for negligence, nuisance, intentional infliction of emotional distress, and wrongful death. Plaintiffs seek compensatory and punitive damages.

The case is presently before the Court on Motions to Dismiss and Motions for Summary Judgment by Defendants Trice, Diggs, Bush, Temple Courts Associates, and Meade. For the reasons stated below, the Court rules on Defendants' motions as follows: 1) Defendants' Motion to Dismiss Plaintiffs Karen Henson as an individual, Karen Henson as Next Friend of Dominique Henson a Minor, and Karen Henson as Next Friend of Raymond Stewart a Minor, **[#53]** is **granted**; 2) Defendants' Motion to Merge Counts and Dismiss Ad Damnum Clauses **[#54]** is **granted**; 3) Defendants' Motion to Dismiss Count I (Negligence) **[#55]** is **denied** without prejudice; 4) Defendants' Motion for Partial Summary Judgment (Punitive Damages) **[#56]** is **denied** without prejudice; and 5) Defendant's Motion for Partial Summary Judgment on Count III of the Complaint (Intentional Infliction of Emotional Distress) **[#57]** is **denied** without prejudice.

**I.    BACKGROUND[4]**

    **A.    <u>Crime and Security Efforts at Temple Courts</u>**

Temple Courts is comprised of a 10 story, 211 unit apartment building located at 33 K Street, N.W., and townhouses located in back of the building.  There is a parking lot between the townhouses and apartment building.

At the time of the incident relevant to this lawsuit, Defendant Temple Courts Associates, a District of Columbia partnership, owned Temple Courts.  The partnership has two principals:  Defendants Bush and Diggs.  Defendant Trice is a wholly owned subsidiary of Bush that manages Bush's properties.

According to Plaintiffs, when Temple Courts Associates purchased the Temple Courts property in 1986, the surrounding neighborhood had a significant crime problem, and some of the buildings' residents were regular drug users.  Between 1986 and 1990, drug users and traffickers created pervasive security problems at the location.

---

[4] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. <u>Abigail Alliance v. Von Eschenbach</u>, 445 F.3d 470, 475 (D.C. Cir. 2006).
    Summary judgment may be granted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable to the non-moving party. <u>McKinney v. Dole</u>, 765 F.2d 1129, 1135 (D.C. Cir. 1985).  Accordingly, for the limited purpose of ruling on Defendants' motions, the Court's discussion reflects inferences favorable to the non-moving Plaintiffs.

In 1990, the United States Department of Housing and Urban Development ("HUD") and the District of Columbia Housing Finance Agency ("DCHFA") worked with the owners and managers of Temple Courts, and others, to form the Northwest One Task Force to combat drug use and crime in the area.[5]  Anthony Ditteaux ("Ditteaux") served as Trice's president at that time.  Ditteaux attended task force meetings, secured funding from Temple Courts Associates for upgrading building security, installed security cameras, and installed an access card system.  Ditteaux also hired Edward Mace ("Mace") to serve as a site manager for Temple Courts.  Mace hired a new security guard company, arranged for armed special police to patrol the premises, and participated in task force meetings.  Plaintiffs claim that these efforts dramatically reduced crime and drug problems at the properties.

In 1995, Ditteaux and Mace's services at Temple Courts ended.  In 1997, Defendant Meade became Trice's business manager.  Plaintiffs maintain that Temple Courts again became a high crime area after the personnel changes.  During Meade's tenure, Trice stopped participating in the Northwest One Task Force and stopped collecting police department crime and incident reports.  DCHFA and HUD reports reveal that drug use and sales were occurring at Temple

---

[5] The task force included representatives from HUD, DCHFA, the Metropolitan Police Department, the District of Columbia Fire Department, city building inspectors, owners and managers of properties in the area, tenants' associations, and private security companies.

Courts. Between 1999 and 2003, Temple Courts Associates reduced its spending on security services from $209,000 to $160,000. In 2000, Meade applied for a HUD Multifamily Housing Drug Elimination Grant. According to Plaintiffs, the application was denied because Trice lacked the police record evidence and crime statistics necessary to satisfy the agency's "objective crime data" requirements.

According to Plaintiffs, in 2001, visitors to Temple Courts wrote letters to Trice describing pervasive drug trafficking that was occurring on the building's second floor. Meade suggested installing a surveillance camera at the location to address the problem, but Plaintiffs claim that his recommendation went unheeded. In May of 2001, Meade received a letter from the United States Attorneys Office indicating that United States Marshals had seized drugs from two Temple Courts apartments while executing a warrant. Trice evicted the residents who occupied the apartments where the drugs were seized, but Plaintiff contends that Trice failed to evict tenants for drug offenses on any other occasions. Plaintiffs claim that Temple Courts failed three consecutive annual HUD facilities inspections in 2001, 2002, and 2003. In 2002, there were three murders on or near the Temple Courts parking lot.

According to Plaintiffs, in November of 2002, Meade contacted Metropolitan's President, Derrick Parks ("Parks"), and cancelled the armed special police's 2:00 a.m. patrol shift which had covered

the building and parking lot.  Plaintiffs claim Parks advised Meade that crime had increased 15 percent and he also told Meade that eliminating the patrol would increase danger for tenants and guards at the property.  Nonetheless, Meade cancelled the shift.

**B.    Santino Henson's Death**

On May 16, 2003, at approximately 2:00 a.m., decedent Santino Henson was in the Temple Courts parking lot with Juan Estep ("Estep") and others.  Santino Henson had intended to spend the night at his grandmother's third-floor apartment in Temple Courts.  A white van pulled into the lot, and its occupants got out of the vehicle and walked towards the front of the building.  When the van's occupants returned, Santino Henson was sitting in the driver's seat of a black Camaro in the parking lot, and Estep was leaning into the Camaro's passenger side window.  Three males from the van approached Estep and Santino Henson and asked to buy marijuana.  An altercation ensued, and one of the men who had arrived in the van pulled out a handgun.

Estep fled from the lot on foot when he saw the gun and heard shots fired as he ran.  Estep hid for a short time, returned to the lot, and found that Santino Henson had been shot.  Estep used his cell phone to call for an ambulance, but Santino Henson did not survive.

## II. STANDARDS OF REVIEW

### A. Defendants' Motions to Dismiss

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999). Accordingly, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. Abigail Alliance v. Von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006).

### B. Defendants' Motions for Summary Judgment

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of the action under the governing law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable to the non-moving party. McKinney v. Dole, 765 F.2d 1129, 1135 (D.C.

Cir. 1985); see also Anderson, 477 U.S. at 255. Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; McKinney, 765 F.2d at 1135. Accordingly, the nonmoving party must provide evidence that would permit a reasonable jury to find in his or her favor. Liberty Lobby, 477 U.S. at 255-56. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

## III. ANALYSIS

### A. Proper Parties

At common law, tort claims do not survive a plaintiff's death. However, under District of Columbia statutory law, plaintiffs may recover for torts that result in death. D.C. Code § 16-2702 and § 12-101; see also Runyon v. District of Columbia, 462 F.2d 1319 (D.C. Cir. 1972). Under the applicable statutes, claims must be brought by a representative of the decedent's estate. D.C. Code §§ 16-2702, 12-101; Runyon, 462 F.2d at 1321.

The Superior Court of the District of Columbia has appointed Karen Henson as the personal representative of her son Santino Henson's estate. Defendants have filed the instant Motion to Dismiss the claims of Karen Henson brought in her personal, individual capacity and the claims brought in her capacity as next

friend of Dominique Henson and Raymond Stewart, the siblings of Santino Henson.

The "personal representative" of the estate may bring claims for wrongful death on behalf of the deceased's next of kin, as well as a survival action on behalf of the deceased's estate. D.C. Code §§ 12-101, 16-2702[6]; Runyon v. District of Columbia, 463 F.2d 1319, 1321 (D.C. Cir. 1972).

It is undisputed that Plaintiff Karen Henson is the sole personal representative of Santino Henson's estate. In that capacity, she is also legal representative of the estate. Accordingly, Defendants' Motion to Dismiss Karen Henson in her personal, individual capacity and in her capacity as next friend **[#53]** is **granted**.[7]

### B. Proper Claims

Defendants argue that the Court should merge Plaintiffs' common law claims into their statutory survival action. Additionally, Defendants argue that the Court should dismiss the ad damnum clauses that correspond to Plaintiffs' common law claims and

---

[6] The wrongful death statute states that suits "shall be brought by and in the name of the personal representative of the deceased person." D.C. Code § 16-2702. Survival actions pursued pursuant to D.C. Code § 12-101 may be brought "in favor of or against the legal representative of the deceased."

[7] Plaintiffs' remaining common law claims are disposed of in Section III.B. infra.

reduce their potential recovery to the $10 million requested in the Complaint's survival action paragraphs.

As already noted, at common law, tort claims do not survive a plaintiff's death; however, the District of Columbia's survival statute permits legal representatives to bring tort claims on behalf of a decedent's estate. D.C. Code § 12-101. The survival statute is the exclusive means by which an estate may recover for common law torts resulting in the decedent's death.

The Court therefore **grants** Defendants' Motion to Merge Counts and Dismiss Ad Damnum Clauses **[#54]** as Plaintiffs' common law tort claims must be merged with their statutory survival action. Plaintiffs may seek recovery of the amounts noted in the Wrongful Death and Survival Action sections of their Complaint.

### C.    Negligence Claims

On April 12, 2006, Defendants filed a one-paragraph Motion to Dismiss Count I (Negligence) **[#55]** in which they referred to and relied on a "Memorandum of Points and Authorities and Argument filed by Metropolitan Protective Services" as "reasons and grounds." Plaintiffs did not respond to Defendants' Motion to Dismiss.

The Court is uncertain as to which document Defendants refer. At the time Defendants filed their Motion to Dismiss, Metropolitan had not filed any such Memorandum. Metropolitan subsequently filed

10

its own Motion for Summary Judgment on All Counts **[#58]**, but that motion addressed its duty to Plaintiffs and, moreover, cited Defendants' reduction in security spending as a superseding cause of Plaintiffs' injuries. The Court declines to guess as to which document Defendants intended to reference, and also declines to speculate about how Metropolitan's Motion for Summary Judgment might be construed to support dismissal in favor of Defendants, especially since Metropolitan is no longer a Defendant in this lawsuit. Moreover, Plaintiffs' Complaint facially sets forth a cause of action for negligence. Accordingly, Defendants' Motion to Dismiss Count I **[#58]** is **denied** without prejudice.

### D.  Punitive Damages

Plaintiffs seek punitive damages on all counts. Defendants argue that no material facts support an award of punitive damages, and that they are entitled to judgment as a matter of law. The Court disagrees.

Punitive damages are disfavored under District of Columbia law. Wanis v. Zwennes, 364 A.2d 1193, 1194 (D.C. 1976). In tort actions, punitive damages may only be awarded to punish defendants' outrageous conduct, maliciousness, wantonness, gross fraud, recklessness or willful disregard of another's rights. Bay Gen. Inuds. v. Johnson, 418 A.2d 1050, 1058 (D.C. 1980). Punitive damages are only proper when the underlying tort is aggravated by

"evil motive, actual malice, deliberate violence or oppression." Price v. Griffin, 359 A.2d 582, 589 (D.C. 1976).

In order to justify an award of punitive damages, Plaintiffs will have to introduce evidence at trial satisfying this demanding standard. However, based on the present record, and favorable inferences for the non-moving Plaintiffs therefrom, the Court cannot, at this time, say no reasonable jury could conclude that Defendants' conduct satisfies this standard. Accordingly, Defendants' Motion for Partial Summary Judgment **[#56]** is **denied** without prejudice.

### E.  Intentional Infliction of Emotional Distress

Defendants have filed a Motion for Partial Summary Judgment on Count III of the Complaint (Intentional Infliction of Emotional Distress). To establish a cause of action for intentional infliction of emotional distress a plaintiff must show 1) extreme and outrageous conduct on the part of the defendant which 2) either intentionally or recklessly 3) causes the plaintiff severe emotional distress. See Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002).

Defendants argue that no material facts support Plaintiffs' intentional infliction of emotional distress claim, and that they are entitled to judgment as a matter of law. Based on the present record, and favorable inferences for the non-moving Plaintiffs therefrom, the Court cannot, at this time, say no reasonable jury

could find Defendants liable for intentional infliction of emotional distress.  Defendants' Motion for Partial Summary Judgment on Count III of the Complaint **[#57]** is therefore **denied** without prejudice.

**IV. CONCLUSION**

For the reasons noted above, Defendants' Motion to Dismiss Plaintiffs Karen Henson, Karen Henson as Next Friend of Dominique Henson, a Minor, and Karen Henson as Next Friend of Raymond Stewart, a Minor, **[#53]** is **granted**; 2) Defendants' Motion to Merge Counts and Dismiss Ad Damnum Clauses **[#54]** is **granted**; 3) Defendants' Motion to Dismiss Count I (Negligence) **[#55]** is **denied** without prejudice; 4) Defendants' Motion for Partial Summary Judgment (Punitive Damages) **[#56]** is **denied** without prejudice; and 5) Defendant's Motion for Partial Summary Judgment on Count III of the Complaint (Intentional Infliction of Emotional Distress) **[#57]** is **denied** without prejudice.

December 21, 2006
/s/
Gladys Kessler
United States District Judge

**Copies to: attorneys of record via ECF**